IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RAYMOND MATHIS,                              )
                                             )
            Plaintiff,                        )
                                             )
      v.                                      )          CASE NO. 1:04-CV-1074-WKW
                                             )                   [WO]
                                             )
LAMAR GLOVER, *et al.,*                       )
                                             )
            Defendants.                       )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Raymond Mathis ["Mathis"] asserts that the

defendants violated his constitutional rights during his confinement in the Houston County

Jail. Specifically, Mathis contends that the defendants denied him medical treatment for

an injury suffered in a fall, engaged in a conspiracy to effectuate a false disciplinary, lodged

a false disciplinary against him and violated the state criminal code. He names  Lamar

Glover, the sheriff of Houston County, Alabama, William B. McCarty, commander of

operations at the Houston County Jail, Sgt. Cindy Buchmann, Sgt. Kim Turner,  officer

Williams, officer Gaff, officer Britt and Sgt. Davis, all correctional officers for the Houston

County Jail, and nurse Hathaway, nurse Speigner and Dr. Banner, medical personnel

employed by the jail, as defendants in this cause of action. Mathis requests declaratory

relief and monetary damages for the alleged violations of his constitutional rights. He also

"seeks criminal actions against [the defendants] who have knowingly violated the Code of

Alabama ..." *December 28, 2004 Amendment to the Complaint - Court Doc. No. 10* at 4;

*January 5, 2005 Amendment to the Complaint - Court Doc. No. 11 at 3.*

The defendants filed a special report, supplement thereto and supporting evidentiary materials addressing the plaintiff's claims for relief. Pursuant to the order entered on March 24, 2005 (Court Doc. No. 30), the court deems it appropriate to treat this report as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, Mathis is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505,

2

2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). A plaintiff's conclusory allegations similarly do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is

proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Mathis has failed to demonstrate that there are any genuine issues of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II.  DISCUSSION OF CLAIMS

### A.  Denial of Medical Treatment[1]

On August 7, 2004, Mathis entered the Houston County Jail on charges of receiving stolen property and failure to appear for non-support.  Upon entry into the jail, Mathis had

---

[1]The pleadings indicate that the actions which form the basis of the instant complaint occurred during Mathis' incarceration in the Houston County Jail as a pretrial detainee.  The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution. *Bell v. Wolfish*, 441 U.S. 520 (1979).  However, for analytical purposes there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

various health complaints, including a complaint of chronic back pain. Based on his complaint of back pain, medical personnel prescribed Ibuprofen. Tylenol was also available at all times from correctional officers upon request. On August 30, 2004, Mathis slipped and fell causing his head and back to hit a toilet.

At the time of Mathis' fall, medical personnel and correctional officers were present in the same area of the jail as Mathis dispensing medication to inmates. Thus, immediately upon Mathis falling, nurse Hathaway and officers Gaff and Buchmann, both of whom are certified Emergency Medical Technicians, responded to evaluate any potential injury Mathis may have endured in the fall. During their attempt to assess the plaintiff's condition, Mathis refused to cooperate and would not allow nurse Hathaway or the correctional officers to examine his back. The medical responders deemed the plaintiff's claims of pain "exaggerated and not consistent with [their] objective observations of the plaintiff. In the interest of caution, the medical clinic's backboard was called for. The plaintiff was rolled over onto the back board and secured ... [and] lifted onto the gurney for transport to the jail medical clinic.... After the plaintiff was secured to the backboard and was placed on the gurney, he no longer voiced complaints of pain and gave no indication that he was in pain." *Defendants' Exhibit 2 - Affidavit of Vallie Gayle Hathaway* at 3.

Upon arrival at the medical clinic, nurse Hathaway again "attempted to examine and assess the plaintiff at which time he refused to be examined and would jerk away from me when I tried to approach him. He became verbally abusive, was jerking around on the

5

gurney and backboard and was yelling that I was suppose to send him to the hospital or he was going to file a lawsuit. The plaintiff continued to jerk around, was arching his back and pushing himself with his feet with no objective indications of back pain. When he could not get me to send him to the hospital without first examining and assessing his medical condition, he began yelling to see the other nurse on duty. The other nurse arrived and also attempted to examine and assess the plaintiff's medical condition. The plaintiff continued to yell and be verbally abusive, continued to jerk around on the gurney and refused to be examined or assessed by the nurse. The plaintiff was offered non[] narcotic pain medicine but he refused to take it. All this time the plaintiff was cussing and yelling that he wanted to go to the hospital and that he was going to sue us if we did not send him." *Id*.; *Defendants' Exhibit 3 - Affidavit of Cindy Buchmann* at 2 ("Inmate Mathis refused to let me or anyone else assess him medically and demanded to be taken to the 'f---ing hospital.' The nurse and I tried to give Inmate Mathis some pain medicine and he refused. The plaintiff continued to be offered medical assessment and treatment by the jail medical staff but the plaintiff continued to refuse assessment or treatment.... At [the time correctional officers placed Mathis in the medical observation cell,] the plaintiff displayed full range of motion and did not appear to have any physical limitations."); *Defendants' Exhibit 4 - Affidavit of Craig Gaff* at 2 ("Mathis refused ... assess[ment] and demanded to be taken to the hospital to see a specialist. The plaintiff was cussing demanding that he be taken to the 'f---ing hospital.' The plaintiff continued to refuse to be assessed or treated

by the jail clinic medical staff.  The plaintiff continued to be offered medical assessment and treatment by the jail medical staff but the plaintiff continued to refuse assessment or treatment....  [Upon placing Mathis on the bunk in the medical observation cell,] the plaintiff displayed full range of motion and did not appear to have any physical limitations.”).

Although medical personnel did not observe “an acute or serious injury, [they] decided to have the plaintiff [placed] in one of the medical holding cells in the clinic for observation....  The plaintiff refused to cooperate in efforts to move him in[to] the medical holding cell.  The plaintiff was verbally abusive and physically resisted all efforts to move him to the medical holding cell.  As a result, corrections officers had to physically carry the plaintiff to the medical holding cell while the plaintiff physically resisted their efforts to do so.  When the plaintiff was finally on the bed in the holding cell lying on his back, he  ... [exhibited] full range of motion of his extremities without any signs or symptoms of pain.  Also, the plaintiff did not verbally indicate pain in any way.... [L]ater, the plaintiff got off his bed, walked to the door of the holding cell and asked for his usual morning medications and for a breakfast tray.  The plaintiff had no difficulty ambulating around the holding cell and demonstrated no signs or symptoms of pain whatsoever.  While the plaintiff was being observed in the medical clinic, the plaintiff made no verbal complaints of pain and exhibited no signs or symptoms of pain.” *Defendants’ Exhibit 2 - Affidavit of Vallie Gayle Hathaway* at 4.  Despite the plaintiff’s repeated requests for return to his regular cell

assignment, medical personnel "did not send him back until [they] were satisfied from a medical standpoint that the plaintiff did not need any additional medical treatment....  Once [medical personnel] were satisfied that the plaintiff was not acutely injured and was not in any type of acute pain, the plaintiff was escorted to his normal cell...." *Id*.

On August 31, 2004, the plaintiff completed an inmate request form to the nursing staff in which he referenced only his inability to use the restroom.  Thus, Mathis made no mention of back pain or an injury to his back at this time, merely one day removed from his fall.  Additionally, on this same date, nurse Hathaway, while dispensing daily medications, observed Mathis and noted no signs of back pain.  Mathis also made no complaints to the nurse with respect to his back and again only mentioned his lack of a bowel movement.  On September 7, 2004, medical personnel evaluated Mathis regarding complaints related to his chronic hemorrhoid condition.  Again, Mathis "voiced no complaint of back pain" at this time.  *Defendants' Exhibit 1 - Affidavit of Darla Jane Speigner* at 6.  Medical personnel continued to observe Mathis and evaluate his condition on a daily basis during pill call.

On September 9, 2004, the attending nurse evaluated Mathis during sick call for complaints of back pain and muscle spasms.  In response to questions from the nurse, Mathis advised that he had "been sleeping on [the] floor [on an] old mat[tress]." *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis -- Sick Call Notes of September 9, 2004*.  Although no objective findings supported the complaints made by

Mathis, the nurse ordered that Mathis receive a different  mattress and be placed on a bottom bunk.  *Id.*

In response to inmate request forms submitted by Mathis on September 13, 2004, September 14, 2004 and September 16, 2004, in which he complained of back pain, the nursing staff referred Mathis to Dr. Sam Banner for evaluation.  On September 24, 2004, Dr. Banner examined Mathis at which time Mathis made "rambling and multiple complaints." *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis -- Sick Call Notes of September 24, 2004*.  Relevant to this case, Mathis complained that he had been sleeping on the floor and had a knot on his back.  Dr. Banner observed "some minor [left] spine spasm [but] no 'knot' - No swelling & no discoloration." *Id*.  Dr. Banner prescribed pain medication, advised correctional officials that Mathis should be placed on a bunk and ordered an X-ray of Mathis' lumbar spine.  *Id*.

On September 29, 2004, Mathis underwent an X-ray of his spine.  This X-ray revealed a "[p]ossible [fracture] of [left] transverse process at L4.  Otherwise normal lumbar spine." *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis -- Houston County Jail Infirmary Record of September 29, 2004*; *X-Ray Report of September 29, 2004* ("There appears to be a lucent line through the left transverse process at L4 suggesting a nondisplaced fracture, however, there is overlying bowel gas in this area which could be creating this effect.... Pedicles are intact.  No discoloration.  Disc spaces are maintained.  No proliferative changes.  The SI joints are patent. IMPRESSION: Within

the limitation stated, possible nondisplaced fracture of left transverse process at L4; otherwise normal lumbar spine."). Based on the impression revealed in this X-ray, nurse Speigner, a certified registered nurse practitioner, ordered a magnetic resonance imaging ["MRI"] and computerized axial tomography ["CAT"] scan of plaintiff's spine. *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis – Physician Orders of October 7, 2004*. Nurse Speigner also prescribed Ultran and Tylenol and ordered that Mathis either be given a second mattress or placed on a bottom bunk. *Id*. Pursuant to these orders, Mathis underwent the MRI on October 8, 2004 and the CAT scan on October 12, 2004.

The MRI indicated "an undisplaced and minimally comminuted fracture of the transverse process of L4 on the left. This does not extend medially to the pedicle or to the arch of L4. There is some minimal surrounding edema/hematoma which would be appropriate for an injury 2 weeks old. Disc spaces are well-maintained. Vertebral bodies appear normal. There is no posterior spondylosis or annular bulging at any level. There is some mild facet hypertrophy at L4-5 and L5-S1 which is apparently old. There is no canal or foraminal narrowing demonstrated." *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis -- Dothan Diagnostic Imaging Report for MRI Transcribed by Dr. John Brannan on October 12, 2004*. The CAT scan demonstrated similar findings. "There is minimally comminuted and undisplaced fracture involving the transverse process of L4 left. This is restricted to the transverse process and does not extend into the pedicle

and certainly not into the foramen or canal.  The fracture is minimally separated and minimally comminuted but is not displaced, and there is little if any surrounding hematoma.... [T]he appearance of the fracture would be appropriate for [an injury two weeks old].  There is some facet hypertrophy present at L4-5 and L5-S1.  There is no obvious disc pathology of other abnormality demonstrated." *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis -- Dothan Diagnostic Imaging Report of CAT Scan Transcribed by Dr. John Brannan on October 12, 2004*.  Thus, Mathis injury to his back consisted of minimal compression of vertebrae with a minimal non-displaced fracture.

Upon review of the results of these procedures, Dr. Banner determined that the course of treatment undertaken by medical personnel at the jail constituted appropriate and adequate treatment for Mathis' back injury.  On October 14, 2004, Dr. Banner attempted to discuss the results of these procedures with Mathis. Dr. Banner advised Mathis that "no cord or nerve damage"existed in his back. Mathis then began to "complain[] his 'nerves' are more of a problem than his back" and advised his medication "upset his stomach [but] stated that he does not wish any [of the medications] stopped.  He got up & left muttering under his breath before I could even finish my conversation." *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis -- Sick Call Notes of October 14, 2004*.

On December 29, 2004, nurse Hathaway referred Mathis for a follow-up X-ray on his back. *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis --*

11

*Houston County Jail Infirmary Record of December 29, 2004*.  This X-ray revealed that the plaintiff's "back has healed" and medical personnel advised Mathis of this finding on December 30, 2004.  *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis -- Inmate Request Form of December 30, 2004*.

Despite his repeated allegations of back pain, correctional officers and medical personnel on several occasions witnessed Mathis participating in rigorous games of basketball.  During these games, Mathis would run, jump and bend displaying full range of motion and exhibiting no signs or symptoms of back pain.  Mathis acknowledges participating in basketball games while at the same time complaining of back pain.  When confronted by Dr. Banner about his playing basketball, Mathis advised that his back "feels better when playing basketball."  *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis -- Sick Call Notes of November 9, 2004*.  Mathis advised jail officials that he played basketball to "stretch out" his back.  *Id. - November 2, 2004 Houston County Jail Statement Form - Statement of Sgt. Kim Turner*.

Mathis asserts that the defendants failed to provide him medical attention for a back injury suffered in his August 30, 2004 fall.  The defendants deny they acted with deliberate indifference to Mathis' medical condition and, instead, maintain that they rendered appropriate and necessary treatment to Mathis for his injury.  The undisputed medical records indicate that medical personnel at the Houston County Jail attempted to examine Mathis and assess his condition immediately after his fall on August 30, 2004.  These

12

records also demonstrate that the nurses on duty offered Mathis a non-narcotic pain reliever at this time.  Mathis acted abusively towards the medical staff, failed to cooperate with their instructions and refused all efforts by the staff to provide him medical treatment.  Despite his unruly behavior, medical personnel placed Mathis in a cell for medical observation.  While observing Mathis, the nurses noted that he "ambulate[d] around in the holding cell and demonstrated no signs or symptoms of pain whatsoever.  The plaintiff [also] made no verbal complaints of pain ...."  *Defendants' Exhibit 2 - Affidavit of Vallie Gayle Hathaway* at 4.  Medical personnel released Mathis from the observation cell when they "were satisfied that the plaintiff was not acutely injured and was not in any type of acute pain ...." *Id*.

The medical records further establish that medical personnel evaluated Mathis and provided treatment to him each time he reported to the health care unit.  The specific treatment depended upon the observations and evaluations of the plaintiff's condition by the attending health care professional.  It is likewise undisputed that medical personnel prescribed various medications and treatment measures in an effort to alleviate Mathis' complaints of back pain.  Additionally, the nursing staff observed and consulted Mathis on a daily basis when dispensing medication to him.

Upon receiving request forms from Mathis in mid-September which referenced back

pain, the nursing staff referred Mathis to Dr. Banner for evaluation.  On September 24, 2004, Dr. Banner examined Mathis and ordered an X-ray of his lumbar spine.  Based on the impression of this X-ray, which indicated a possible non-displaced fracture, Dr. Banner referred Mathis for a MRI and CAT scan of his lumbosacral spine.  The MRI and CAT scan  indicated a non-displaced, minimal compression fracture at the L4 vertebrae.  Thus, other than controlling plaintiff's pain, the diagnostic imaging procedures failed to indicate the necessity of any additional treatment.  To alleviate the complaints of pain voiced by Mathis, medical personnel prescribed medication, ice packs, an extra mattress and a bottom bunk profile.  They also consulted Mathis regarding his playing strenuous games of basketball as such activity could aggravate his back injury.  Mathis ignored this concern of medical officials and continued to play basketball on a regular basis.  A follow-up X-ray performed on December 29, 2004 indicated that the non-displaced fracture had healed.

To prevail on a claim concerning an alleged denial of medical treatment violative of the Constitution, an inmate must, at a minimum, show that those responsible for providing such treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, a jail's medical and correctional personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). "In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth [or Fourteenth] Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the [Constitution] only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference). Thus, a medical care provider may be held liable under either the Eighth or Fourteenth Amendment

only for acting with deliberate indifference to an inmate's health when the provider knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994).

The undisputed evidentiary materials submitted by the defendants demonstrate that jail medical personnel routinely examined the plaintiff, evaluated his complaints and responded in an appropriate manner to his requests for treatment. *Defendants' Exhibit 1 to Exhibit 6 - Medical Records of Raymond Mathis*. These materials likewise establish that Dr. Banner and other medical personnel prescribed various medications during their treatment of Mathis' complaints of back pain. *Id*. The medical staff also referred Mathis for X-rays, a MRI and a CAT scan to ascertain the extent of any injury and determine an appropriate course of treatment. It is therefore clear that the medical treatment provided to Mathis by the defendants was neither grossly incompetent nor inadequate. Although Mathis maintains that he should have received some other type of treatment, the mere fact that he desired a different mode of medical treatment does not amount to deliberate indifference. *Harris*, 941 F.2d at 1505. Mathis presents no significantly probative evidence which demonstrates that the defendants in any way disregarded a substantial risk to his health. Consequently, Mathis has failed to establish that the defendants acted with deliberate indifference. Summary judgment is therefore due to be granted in favor of the defendants.

## B. The Conspiracy Claim

Mathis alleges that the defendants engaged in a conspiracy to effectuate a false disciplinary against him.  "Conspiring to violate another person's constitutional rights violates section 1983.  *Dennis v. Sparks,* 449 U.S. 24, 27 101 S.Ct. 183, 186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir.1996)."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002).  "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement ..." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants....  For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284.  Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy.  *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

The defendants deny they conspired to violate Mathis' constitutional rights and

assert they did not undertake disciplinary action against him for manipulation.  The court has carefully reviewed the pleadings filed by the plaintiff.  There is a total lack of evidence to support Mathis' theory that the defendants conspired to deprive him of his constitutional rights.  Specifically, Mathis has failed to present any evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy."  *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468.  At best, Mathis' assertions are self serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy between the defendants.  *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984).  Thus, Mathis has failed to produce requisite evidence of a conspiracy and summary judgment is due to be granted in favor of the defendants on this claim.  *Bailey*, 956 F.2d at 1122.

### C.  Alleged False Disciplinary - Collateral Estoppel and Malicious

With respect to the plaintiff's claim that defendant Buchmann lodged a false disciplinary against him for manipulation, the instant complaint asserts an identical claim for relief as an earlier complaint filed with this court.  *Mathis v. Buchmann, et al.*, Civil Action No. 1:04-CV-941-MEF-TFM (M.D. Ala. 2007).   In the February 15, 2007 Recommendation entered in the aforementioned case, adopted as the opinion of this court on March 7, 2007 (Court Doc. No. 29), the court determined that the defendants were entitled to summary judgment on this claim.  The Recommendation reads in pertinent part as follows:

18

Mathis asserts that on August 30, 2004, he fell on a wet floor and defendant Buchmann falsely accused him of manipulation. He maintains that after Buchmann's accusation the defendants failed to provide him a disciplinary hearing on this charge and placed him in lock-up in violation of his due process rights. Defendant Buchmann denies that she lodged a disciplinary against Mathis for manipulation and maintains that jail officials did not place Mathis in lock-up for this alleged infraction. *Defendants' Exhibit B - Court Doc. No. 13-3 -- June 12, 2006 Supplemental Affidavit of Cindy Buchmann* at 2-4 ("[P]laintiff was placed on the backboard and then placed on the gurney and transported to the Jail Medical Clinic by [correctional officers and] Nurse Hathaway.... Approximately ten minutes later, Corrections Officer Athey called me on the radio and asked us to come to the [Medical] Clinic.... Plaintiff refused to let me or anyone else assess him medically and demanded to be taken to the 'f---ing' hospital.... [Correctional officers] assisted Plaintiff off the gurney and back board and placed him in L-4, one of the cells in the jail's medical clinic." Mathis thereafter requested that he be returned to his cell and officer Gaff escorted the plaintiff "to A-POD, his usual housing assignment.... I am certain I did not lodge a disciplinary charge against the plaintiff for violation of Rule Number 5, manipulation. The plaintiff was not placed in segregation and was returned to his usual cell assignment in A-POD. The plaintiff was not placed in lock-up without a hearing as he was not placed in lock-up...."); *Defendants' Exhibit A - Court Doc. No. 25-2 -- August 4, 2006 Supplemental Affidavit of Cindy Buchmann* ("I am reasonably certain I did not lodge a disciplinary charge against the plaintiff for violation of Rule Number 5, manipulation. I never placed the plaintiff in segregation ... [as] he was returned to his usual cell assignment in A-POD.").

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Mathis bears the burden of producing significant probative evidence that a violation of his constitutional rights occurred. *Anderson v. Liberty Lobby*, 477 U.S. at 249. Additionally, Mathis cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. at 252.

The court has undertaken a thorough and exhaustive review of the plaintiff's jail file and all evidentiary materials submitted by the parties. This review reveals that Buchmann did not lodge a disciplinary against Mathis on August 30, 2004 for manipulation. Specifically, the plaintiff's jail records are devoid of an August 2004 disciplinary for manipulation. Mathis has

failed to produce any evidence which demonstrates that Buchmann actually lodged a disciplinary against him; rather, the only document submitted by Mathis to support his allegation is an inmate request form seeking a copy of an "appeal & sanction written up by Sgt. Buckmann ...." *Plaintiff's Exhibit 18 - Court Doc. No. 2–2* at 5 -- *September 23, 2004 Inmate Request Form*; *Defendants' Exhibit N - September 23, 2004 Inmate Request Form*. However, in response to this request, the jail commander advised Mathis that no such "sanction or appeal" existed in his records. *Defendants' Exhibit N - September 23, 2004 Inmate Request Form.* Moreover, the plaintiff's jail records demonstrate that correctional officers did not place Mathis in lock-up on this date; rather, they transferred Mathis to the jail's health care unit and placed him in a medical observation cell for a short period of time. Upon his request for release from the medical observation cell, a correctional officer returned Mathis to his assigned cell in A-Pod. *Plaintiff's Exhibit 2 - Court Doc. No. 20-2* at 2 -- *August 30, 2004 Inmate Grievance Form*; *Plaintiff's Exhibit 18 - Court Doc. No. 2–2* at 5 -- *September 23, 2004 Inmate Request Form*; *Defendants' Exhibit A - Court Doc. No. 10-5 -- March 18, 2005 Affidavit of Cindy Buchmann* at 2; *Defendants' Exhibit B -Court Doc. No. 13-3 -- June 12, 2006 Supplemental Affidavit of Cindy Buchmann* at 2-4. On August 30, 2004, Mathis prepared an inmate grievance with respect to this matter in which he references his return to A-Pod on said date. *Plaintiff's Exhibit 2 - Court Doc. No. 20-2* at 2 -- *August 30, 2004 Inmate Grievance Form*.

Other than his self-serving and conclusory allegations of constitutional violations, Mathis has failed to present any evidence, significantly probative or otherwise, that he received a disciplinary for manipulation or suffered placement in lock-up for this alleged disciplinary. Essentially, the court has nothing other than the plaintiff's mere conclusions of law and unsupported factual allegations that the actions of the defendants ran afoul of the Constitution. All of the probative evidence before the court demonstrates that officer Buchmann did not lodge a disciplinary against Mathis for manipulation nor did any correctional officer place him in lock-up based on such charge. Consequently, summary judgment is due to be granted in favor of the defendants. *Hilton v. Secretary for Dept. of Corrections*, 170 Fed.Appx. 600, 604-605 (11th Cir. 2005); *Harris v. Ostrout* 65 F.3d 912, 916 (11th Cir. 1995).

*Mathis v. Buchmann, et al.*, *supra*. - *Recommendation of the Magistrate Judge (Court Doc.*

*No. 28)* at 4-8, adopted as opinion of the court, *Order of March 7, 2007 (Court Doc.*

*29*).

In their answer to the complaint, the defendants assert the affirmative defense of estoppel.  *Defendants' Special Report and Answer - Court Doc. No. 29* at 8.  For the bar of collateral estoppel to apply, the issue at stake must be identical to the one involved in the prior litigation, the issue must have been actually litigated in the prior action, the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action, and the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.  *I. A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986).

In the instant case, the issue at stake as to the initiation of a false disciplinary is identical to the issue presented in *Mathis v. Buchmann, et al.*, *supra*.  Mathis asserted in that case, as he asserts in the present case, that the defendants lodged a false disciplinary against him related to his fall and failed to provide him a hearing on this charge.  As is obvious from the foregoing recitation of the Recommendation, which now serves as the opinion of the court, the parties actually litigated this issue in *Mathis v. Buchmann, et al.*, and determination of the issue constituted a critical and necessary part of the judgment.  Moreover, Mathis had a full and fair opportunity to litigate the disciplinary issue in the prior civil action.  Thus, the court concludes that the preclusive effect of collateral estoppel bars relitigation of this issue in the present case.

The court further finds that the disciplinary issue is likewise malicious.  The

21

presentation of a malicious claim is abusive of the judicial process and is not permissible under 28 U.S.C. § 1915(e)(2)(B)(i).  A federal court may therefore dismiss a claim as malicious, at any time,  where earlier and later complaints present a substantially identical claim.  *See Cato v. United* States, 70 F.3d 1103, 1105 n.2 (9th Cir. 1985) (duplicative claims subject to dismissal under section 1915 as malicious); *Bailey v. Johnson*, 846 F.2d 1019 (5th Cir. 1988) (an *in forma pauperis* complaint repeating the same factual allegations asserted in an earlier action is due to be summarily dismissed under 28 U.S.C. § 1915).

The claim presented in this case arising from the alleged false disciplinary for manipulation is indistinguishable from the claim presented and decided in *Mathis v. Buchmann, et al.*, Civil Action No. 1:04-CV-941-MEF-TFM (M.D. Ala. 2007).  In light of the foregoing, it is clear that the instant complaint, with respect to the false disciplinary claim, is malicious and summary dismissal of such claims is therefore appropriate under 28 U.S.C. § 1915(e)(2)(B)(i).

### D.  The Request for Criminal Prosecution

Mathis requests that criminal charges be initiated against the defendants for their violation of state law.  An essential element of a 42 U.S.C. § 1983 action is that the conduct complained of must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981). To state a viable claim for relief under § 1983, a plaintiff must assert that he was "deprived of a right secured by the Constitution or laws of the United States ..."  *Blum v. Yaretsky,*

457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). A "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Leeke v. Timmerman*, 454 U.S. 83 (1981). Consequently, Mathis has no constitutionally protected interest in the criminal prosecution of the defendants and this claim is therefore subject to dismissal pursuant to the directives of 28 U.S.C. § 1915(e)(2)(B)(i).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for summary judgment filed by the defendants be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before April 24, 2007 the parties may file objections to the Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by

the District Court of issues covered in the Recommendation and shall bar the party from

attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

     Done this 13th day of April, 2007.



     /s/Terry F. Moorer
     TERRY F. MOORER
     UNITED STATES MAGISTRATE JUDGE